OPINION
This is an appeal from a judgment of the Court of Common Pleas of Clermont County, Juvenile Division, in which the court permanently terminated the parental rights of appellant, Helen Evans, mother of Tony Tull ("Tony"), born May 17, 1993, and Christopher Estep ("Christopher"), born February 15, 1995, and placed Tony and Christopher in the permanent custody of the Clermont County Department of Human Services ("CCDHS"). We affirm.
On January 11, 1994, Tony Tull was adjudicated dependent and placed with appellant under protective supervision. This adjudication was largely based upon alcohol and domestic violence incidents. A six-month review noted that appellant was complying with most of the case plan and no incidents of drug or alcohol abuse had been reported. Subsequent reviews also noted progress in several areas, but continuing concerns regarding appellant's confidence in her parenting skills and relationships with family members and her boyfriend.
Shortly after his birth, Christopher was also adjudicated dependent and placed under protective supervision. Appellant and Christopher's father, Donald Estep, agreed to this disposition. Appellant's case plan called for visitation by a homemaker, domestic violence counseling, parenting classes, and therapeutic counseling.
After a domestic violence incident in late 1995, Donald Estep left the home. Appellant displayed fear of living alone and lack of confidence in her parenting skills. On March 26, 1996, the agency moved to change the protective supervision order to temporary custody. This change was requested because appellant had not complied with the case plan by obtaining therapy or a support group and the homemaker had terminated services because sufficient progress was not made. Complaints had also been received that the children were without supervision.
On March 28, 1996, CCDHS personnel contacted the police to enter appellant's apartment and rouse her in the early afternoon. Both children were reported to be hungry and dirty. Temporary emergency custody was granted to CCDHS on April 2, 1996 and temporary legal custody was granted to the agency by agreement on April 16, 1996.
On November 5, 1996, CCDHS moved for permanent custody. The trial court held an adjudicatory hearing on the permanent custody motion. Testimony from Dr. Joseph Cresci was heard on August 5, 1997. Dr. Cresci had performed a parental fitness evaluation of appellant in September of 1996. Dr. Cresci found that appellant had mild mental retardation and a borderline psychotic personality disorder. He concluded that appellant was not able to take care of her children in a proper manner. Dr. Cresci acknowledged that appellant's appearance had improved dramatically between the time of the evaluation and the time of the hearing, but his opinion did not change.
Testimony continued on October 16, 1997.[1] A caseworker, Susan Grabowski, testified concerning the agency's involvement and outlined the services which had been provided to appellant. Grabowski noted that appellant had missed seventeen out of thirty-seven appointments for visitation with her children in 1996 and twenty-one out of thirty-nine visits in 1997. She further stated that appellant had not continued long enough in domestic violence and therapeutic counseling for the agency to receive progress assessments. She noted that appellant could have received transportation passes if she had requested them.
Appellant testified that she had missed visitations due to transportation problems. She testified that she had subsequently obtained a car and had been to all required domestic violence, therapeutic counseling, and parenting classes. Appellant also testified that she had successfully conquered her prior alcohol problems and had benefited from the domestic violence counseling and parenting classes she had received.
Appellant's expert witness, Dr. Kathleen Hart, testified that she had examined appellant for mental status. She stated that although she had no evidence to suggest that appellant did not have basic parenting skills, she could not give an opinion as to custody.
The hearing continued on November 18, 1997. Clarence Pauley, supervisor of the permanency planning unit, testified that the probability was "100 percent" that the children would be able to be adopted successfully. They had bonded well with their current caregivers who wished to adopt them together. Mr. Pauley noted that the home had been assessed and approved for adoption.
After consideration of the testimony and evidence, the magistrate determined by clear and convincing evidence that neither of the children could be placed with either of their parents within a reasonable time and that granting permanent custody to CCDHS was in the children's best interest. The magistrate issued a decision on December 16, 1997 recommending that CCDHS be awarded permanent custody of Tony and Christopher. Appellant filed objections to the magistrate's decision on February 3, 1998. The trial court held a hearing on the objections on February 24, 1988. On March 23, 1998, the trial court affirmed the magistrate's decision over objections, thereby terminating appellant's parental rights.
Appellant timely appealed and raises two assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY TERMINATING APPELLANT EVANS' PARENTAL RIGHTS WITHOUT MAKING A FINDING OF APPELLANT'S UNSUITABILITY AS A PARENT.
Assignment of Error No. 2:
 THE TRIAL COURT ABUSED ITS DISCRETION TO THE SUBSTANTIAL PREJUDICE OF APPELLANT EVANS BY AWARDING PERMANENT CUSTODY TO CHILDREN'S PROTECTIVE SERVICES BASED UPON THE STALE AND CONTRADICTORY EVIDENCE ADDUCED AT TRIAL.
In her first assignment of error, appellant argues that the trial court erred procedurally by considering the best interests of the children without first explicitly finding that appellant was "unsuitable." She also argues that even if the court applied the correct standard, the evidence did not demonstrate her unsuitability.
Appellant is correct that a "best interests" finding alone is insufficient for termination of parental rights. A trial court shall grant permanent custody to an agency only when it finds by clear and convincing evidence that one or more of the specifically enumerated factors in R.C. 2151.414(E) are present. In re William S. (1996), 75 Ohio St.3d 95, syllabus. If the trial court determines that one or more of the statutory factors exists, it must also, as required by R.C. 2151.414(D), consider whether permanent custody is in the best interest of the child. Id. at 99. See, also, In re Lawson/Reid (Apr. 18, 1997), Clark App. No. 96-CA-0010, unreported.
R.C. 2151.414(E) provides, in pertinent part:
 * * * If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
(12) Any other factor the court considers relevant.
In the present case, the trial court found that although appellant had improved her personal situation and had partially remedied her transportation problems, she still could not parent. During the hearing, the magistrate explicitly stated that the children could not be placed with either of the children's parents within a reasonable time or should not be placed with the children's parents. This finding was supported by evidence of several of the enumerated factors, including R.C. 2151.414(E)(1) (parent's failure to remedy problems that initially caused the child to be placed outside the home); R.C. 2151.414(E)(2) (chronic mental illness, emotional illness, or mental retardation so severe that parent is unable to provide an adequate permanent home); and R.C. 2151.414(E)(4) (parent has demonstrated lack of commitment by failing to regularly support, visit or communicate with the child when able to do so). The court made this finding before proceeding to address the other portion of the permanent custody proceeding, the determination of the best interests of the children. Therefore, appellant's first assignment of error is overruled.
In her second assignment of error, appellant specifically argues that the trial court erred in relying on Dr. Cresci's testimony because it was contradicted by another expert, and that the evidence was insufficient to support the trial court's termination of appellant's rights. Appellant also argues that many of the problems she experienced with visitation and compliance with her case plans were the result of inability to procure reliable transportation, rather than neglect or lack of commitment. Appellant also notes that she has taken several affirmative steps to remedy her deficiencies in care and maintenance of her children.
As noted above, R.C. 2151.414(E) requires that permanent custody be granted to an agency only when the court's determination is supported by clear and convincing evidence. On appeal, if a judgment is supported by competent, credible evidence going to all of the essential elements of the case, it will not be reversed as being against the manifest weight of the evidence. C.E. Morris v. Foley Construction (1978), 54 Ohio St.2d 279, syllabus.
The trial court did not rely solely on Dr. Cresci's opinion or on sporadic visitation in reaching its decision. The court noted that appellant had participated in parent education classes after the children had been found dependent. However, the court found that appellant still could not parent her children. Despite appellant's argument that this was only a theory based on stale and conflicting testimony, there is clear and convincing evidence in support of this finding.
Dr. Cresci's opinion was based upon a diagnostic history, a mental status examination, and thematic apperception tests which revealed concrete thinking, limited intellectual skills, defensive, oppositional, and defiant attitudes, and lack of ability to apply basic child principles in a flexible manner. Dr. Cresci noted mild mental retardation, a borderline psychotic personality disorder and a history of unstable relationships. He opined that while no one of those factors alone made it impossible for appellant to parent her children adequately, the combination made her prognosis extremely poor. Although almost a year had elapsed between his examination and his testimony at the hearing, he found no evidence that his opinion on appellant's ability to parent should change.
Appellant's expert witness, Dr. Kathleen Hart, a neuro-psychologist, testified that she examined the appellant on September 12, 1997. Dr. Hart also took a history and conducted intelligence tests and the Vialand Adaptive Behavior Scale test. Dr. Hart testified that appellant's "daily living scale" fell within the average range and her "communication scale" fell well below average. Dr. Hart noted that appellant's IQ scores fell in the range that "might be considered mental retardation" but her adaptive abilities did not. Therefore, Dr. Hart did not concur with Dr. Cresci's diagnosis of mental retardation. Dr. Hart also disagreed with Dr. Cresci's diagnosis of appellant as a borderline psychotic. However, Dr. Hart stated that she could not give an opinion on whether custody should be returned to appellant, and further stated that appellant would need services at some level consistently or continually if given custody. In her written report, Dr. Hart had noted that "[w]hile there might well be reason to question [appellant's] ability to adequately parent her children by herself, she does possess many of the basic skills required to manage herself and her household, especially if she had the ongoing assistance of family or other support systems."
The evidence in the record reveals that even considering Dr. Hart's somewhat favorable opinion, the trial court had competent, credible evidence to determine that the children should not be placed with the appellant. The children were removed from appellant's custody due to neglect while she was being provided with support from the agency. Thus, there is reason to question Dr. Hart's opinion that appellant could parent if provided with such services. Furthermore, the record shows that an agency-provided homemaker had discontinued service due to lack of progress. The record further reveals that no evidence of family support was presented to the trial court.
Having reviewed the record and the transcript of testimony, we find that clear and convincing evidence existed from which the trial court could have found appellant had failed to substantially remedy the conditions causing the children to be placed outside the home and that appellant's mental retardation and emotional illness made her unable to provide an adequate permanent home, thereby satisfying the requirement that one or more of the twelve factors of R.C. 2151.414(E) be present before a court can grant permanent custody.
Although appellant has not specifically contested the issue, we note that the evidence also established that the trial court did not abuse its discretion in determining that an award of permanent custody to CCDHS was in the children's best interest. In response to objections to the magistrate's report, the Guardian Ad Litem noted that due to appellant's sporadic visitation with her children, their relationship with her had been weakened. The Guardian Ad Litem stated that the children should be allowed the parenting an adoptive home would provide. The trial court found that the children needed a legally secure placement and that the children's current caregivers had expressed an interest in adopting the children together. This finding was supported by the record. We will not disturb a trial court's permanent custody award as against the manifest weight of the evidence under these circumstances. In re Sims (Aug. 19, 1991), Butler App. No. CA91-01-003, unreported.
Based on all of the foregoing, appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., concurs.
WALSH, J., concurs in judgment only.
[1] Tony Tull, father of Tony Tull, appeared and stated that he did not want counsel and did not want to contest the motion for permanent custody. Although Donald Estep, Christopher's father, contested the motion to terminate his parental rights, he has not appealed the decision.